UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ACCURATE INSURANCE SERVICES, INC. | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| ACCURATE INSURANCE AGENCY, LLC | ) |
| | ) |
| Defendant | ) |

**TRADEMARK COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

ACCURATE INSURANCE SERVICES, INC., ("Plaintiff"), brings this civil action against ACCURATE INSURANCE AGENCY LLC ("Defendant"), for the illegal and ongoing use of its registered trademarks despite repeated requests to Defendant to stop. Plaintiff states the following in support of its claims:

**Parties**

1. Plaintiff is an Illinois corporation based in DuPage County, Illinois.

2. Defendant's insurance business was organized in Arizona.

**Jurisdiction and Venue**

3. Original jurisdiction is rooted in 28 U.S.C. §§§1331 and §1338(a).

4. Defendant has committed a tort against Plaintiff and its property within the Northern District of Illinois allowing contacts sufficient to permit the court to exercise personal jurisdiction under the long-arm statute of Illinois.

5. Venue is proper in this District under 28 U.S.C. §1391(b)(2), (c) and (d).

**Common Allegations**

6. Plaintiff markets and sells insurance in 14 states under the name Accurate Auto Insurance® ("AAI"), which was first used in commerce on November 1, 1992.

7. AAI received United States trademark rights in August 2006 and is listed on the principal register under Registration Number: 3,260,827 (the "Mark"). *Exhibit #1*. The Mark is incontestable as of July 2012 and was renewed November 2016.

8. Plaintiff has continuously operated its business from inside Illinois since 1992. As of June 2017, Plaintiff moved its operations to DuPage County, Illinois. Before that, it operated entirely out of Cook County, Illinois.

9. Plaintiff started selling insurance in Arizona in February 2012, but it does not do the level of business there as it does in Illinois. Plaintiff anticipate greater market penetration by deploying resources to get greater visibility.

10. Plaintiff invests in the marketing of its Mark. Plaintiff promotes its Mark through digital media, including on the World Wide Web, its website accurateautoins.com, and many other websites. Plaintiff's digital media strategy focuses on promoting the Mark generally and for the benefit of its reputation.

11. Plaintiff also spends money promoting its Marks using other various forms of advertising, including billboards, print advertisements in phone books, newspapers, publications, and other mediums.

12. Plaintiff invests in protecting its Mark by policing it, even in States where it does not yet offer or sell insurance, and against businesses seeking to register confusingly similar names.

13. Plaintiff has used the Mark continuously in its insurance business and the Mark has become famous as a result.

14. Defendant is an LLC organized in June 2012 to sell insurance in Arizona. Thus, Defendant began selling insurance long after Plaintiff's own business was established and its trademark became famous.

15. Defendant and Plaintiff offers the same type of insurance products and services to consumers.

16. Defendant markets and sells its insurance products and services through its website, www.accins.net. Defendant's website is accessible anywhere within the United States and can reach customers anywhere in the United States, including in Illinois.

17. Plaintiff recently learned that Defendant has been selling insurance under the name, Accurate Insurance Agency, Accurate Insurance Agency of Scottsdale, or similar other variations.

18. Defendant, however, has no known registered or unregistered trademarks to give it superior or senior rights over Plaintiff to the Mark relative to the sale of insurance.

19. Because Plaintiff and Defendant's names, products, and services are so alike they could and are likely to cause confusion.

20. Plaintiff has learned that there have been instances of actual confusion between the two companies.

21. Beginning January 2017, Plaintiff sent letters to Defendant. The letters advised Defendant that Plaintiff owned the Mark, and that Defendant's use was infringing the Mark and was likely causing confusion in the marketplace. The letters were sent by both US Certified Mail (return receipt) and US First Class Mail. The letters were mailed on at least 2 separate occasions.

22. The letters asked Defendant to cease and desist from using and appropriating the Mark. Defendants were asked to call the Plaintiff so they both could try to resolve the matter amicably with minimal cost to each party.

23. Having received no response to the letters, Counsel for Plaintiff, on April 25, 2017, telephoned Defendant's office. Plaintiff's attorney spoke to a person who answered the telephone and identified herself as "Sara." Plaintiff's attorney asked Sara to speak with "Paul Schmidt."

24. Paul Schmidt ("Schmidt") is listed with the Arizona Secretary of State as both a registered agent and a managing member of Defendant's LLC.

25. Schmidt is also listed as Defendant's contact person on the Internet Corporation for Assigned Names and Numbers ("ICANN's") domain name registry. Policies issued by ICANN require each internet domain owner to disclose certain contact information to the public. Schmidt disclosed information at the time included the Defendant's domain name, Schmidt's address for surface mail communication, telephone number, and an electronic mail address.

26. Sara refused to have the Plaintiff's attorney speak to Paul Schmidt. Immediately after getting off the phone with Sara, Plaintiff's counsel followed up with an email addressed to Paul Schmidt. The email included attachments of the mailed cease and desist letters mentioned above.

27. In the email, Plaintiff's counsel again asked Schmidt or his attorney to call so the parties might try resolving the matter amicably.

28. In each letter, phone call and email communication, Plaintiff asked Defendant to contact Plaintiff attorney by a certain date.

29. In each communication, Plaintiff sought written assurance from Defendant that it would cease using the Mark, or, at minimum, attempt to reach a mutually agreeable resolution of the matter.

30. At no time in communicating with Defendant did Plaintiff threatened litigation. Rather, Plaintiff sought to resolved the matter amicably with limited to no expense to either party.

31. Defendant never responded to any of the communication from Plaintiff. Instead, Defendant has ignored Plaintiff and continues its use of Plaintiff's Mark with impunity.

32. Through the operation of its business, Defendant has harmed and continues to harm

33. Plaintiff is out of options and is forced to bring this action to stop the harm it suffers from Defendant's conduct.

34. The harm Defendant has caused is ongoing and unabated. Plaintiff seeks actual damages, injunctive relief, it attorneys' fees and costs, and all other available remedies.

## COUNT I
## Trademark Infringement, Lanham Act (15 USC §1114)

35. Plaintiff re-alleges paragraphs 6-34 here.

36. Plaintiff is the sole and exclusive owner of the Mark.

37. Through its marketing and operations, Plaintiff's Mark, the services and goodwill associated therewith are known to the public and in the auto insurance industry. Plaintiff's Mark distinguishes Plaintiff, its services, and the associated goodwill from that of its competitors.

38. Defendant's use and continued use of the Infringing Name in providing substantially similar services is an infringement of Plaintiff's Mark that violates the Lanham Act.

39. Defendant's use and continued use of the Infringing Name is without license, consent or permission from Plaintiff.

40. By its use and continued use of the Mark, Defendant has caused and will continue to cause confusion in the marketplace, mislead or deceive the public into believing that Defendant's services are associated with, or connected to Plaintiff's, thereby depriving Plaintiff the goodwill and other property rights attached to the Mark.

41. Defendant's use and continued use of the Infringing Name to sell similar products and services is wrongful, intentional and in deliberate and knowing disregard of Plaintiff's exclusive ownership rights to the Mark.

42. Defendants know of Plaintiff's Mark and Defendant continues to illegally use them without permission.

43. The trademark infringement complained of herein has caused and, unless restrained and enjoined, will cause irreparable harm, damage and injury to Plaintiff, for which it has no adequate remedy at law.

## COUNT II
### Federal Unfair Competition, Lanham Act (15 USC §1125(a))

44. Plaintiff re-alleges paragraphs 6-43 here.

45. The Mark used by Plaintiff in its insurance service business is distinctive and/or has acquired secondary meaning.

46. Defendant's use of the Mark to sell the same kind of insurance infringes Plaintiff's Mark, is likely causing confusion, or causing mistake, or deceiving the public as to the origin, sponsorship or approval of Defendant's services.

47. Defendant has used and continues its use of the Mark in bad faith, with the intent to trade upon the goodwill established by Plaintiff, to create confusion in the public mind, and to misappropriate Plaintiff's rights in the goodwill it has established in the Mark, all to the irreparable injury of Plaintiff.

48. By Defendant's unlawful activities, Plaintiff has been and is likely to be damaged, and, unless Defendants' activities are restrained, Plaintiff will continue to suffer serious and irreparable injury.

## COUNT III

**Trademark Dilution, Lanham Act (15 USC §1125(c)**

49. Plaintiff re-alleges paragraphs 6-48 here.

50. Plaintiff's Mark is recognized by the public as a designation of source of Plaintiff's services.

51. The Mark has become famous due to Plaintiff's: (a) use since at least 1992, (b) the significant sales of goods and services under the Mark; and (c) advertising and marketing of the Mark.

52. Defendant's use of the Infringing Name began many, many years after Plaintiff started using its Mark or after the Mark became distinctive or famous.

53. Defendants continue to ignore entreaties to cease and desist. Defendant's use of the Infringing Name will harm Plaintiff by harming the reputation or goodwill symbolized by the Plaintiff's Mark.

54. Plaintiff has been and is likely to be damaged because of Defendant's activities. Unless Defendants' activities are restrained, Plaintiff will continue to suffer serious and irreparable injury without a full and an adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

    **a.** Temporarily, preliminarily and permanently enjoin, pursuant to 15 U.S.C. §1116. Defendant, its representatives, officers, directors, agents, servants, employees and attorneys and all persons in active concert with it from using, in any fashion, the Infringing Name or any variations thereof or any trade name, trademark or service mark confusingly or deceptively like the Mark in connection with the promotion, advertising, solicitation, operation, conduct and expansion of Defendant's business;

b.  Order, pursuant to 15 U.S.C. §1118, Defendant, its representatives, officers, directors, agents, servants, employees and attorneys and any and all persons in active concert with them to deliver to Plaintiff for destruction, all advertisements, brochures, promotional materials, signs, stationery, business cards, other written material or videotapes, clothing, personal accessories, or any other product or thing which depicts or otherwise disclose the Mark, or any name or mark confusingly similar thereto;

c.  Order Defendant, its representatives, officers, directors, agents, servants, employees and attorneys and all persons in active concert with them to fully compensate Plaintiff for the preparation and distribution of any necessary corrective advertising;

d.  Order an accounting of all of Defendant's profits derived from infringements, and award to Plaintiff exemplary damages, attorney's fees and costs therefor;

e.  Order monetary relief in the amount of all profits derived by Defendant from the sale of their services and for all damages sustained by Plaintiff because of said acts of infringement and unfair competition complained of herein;

f.  Order monetary relief in the amount of treble the amount of actual damages suffered by Plaintiff;

g.  Order monetary relief in the amount of Plaintiff's reasonable attorneys' fees and costs of suit; and

h.  Award Plaintiff such other and further relief as this Court deems just and proper under the circumstances.

Plaintiff hereby waives jury trial on all triable issues.

_____
Frank A. Johns
JOHNS LAW LLC
Attorney for: Accurate Insurance Services, Inc.
205 N. Michigan Ave, Suite 850, Chicago, IL 60601
P: (312) 257-3970
F: (312) 756-7375
Email: Fjohns@johns-law.com

Int. Cl.: 36

Prior U.S. Cls.: 100, 101 and 102

United States Patent and Trademark Office

Reg. No. 3,260,827
Registered July 10, 2007

SERVICE MARK
PRINCIPAL REGISTER



ACCURATE AUTO INSURANCE, INC. (ILLINOIS CORPORATION)
9115 SOUTH HARLEM AVE.
BRIDGEVIEW, IL 60455

FOR: ACCIDENT INSURANCE UNDERWRITING; APPRAISALS FOR INSURANCE CLAIMS OF PERSONAL PROPERTY; INSURANCE BROKERAGE; INSURANCE CARRIER SERVICES; INSURANCE CLAIMS PROCESSING; INSURANCE CONSULTATION; INSURANCE SERVICES, NAMELY, UNDERWRITING EXTENDED WARRANTY CONTRACTS IN THE FIELD OF AUTOMOBILES; INSURANCE UNDERWRITING SERVICES FOR ALL TYPES OF INSURANCE, IN CLASS 36 (U.S. CLS. 100, 101 AND 102).

FIRST USE 11-1-1992; IN COMMERCE 11-1-1992.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "AUTO INSURANCE", APART FROM THE MARK AS SHOWN.

THE COLOR(S) RED, WHITE, AND BLACK IS/ARE CLAIMED AS A FEATURE OF THE MARK.

THE COLOR RED APPEARS IN THE OBLONG DESIGN, THE COLOR WHITE APPEARS IN THE WORDING ACCURATE AND THE COLOR BLACK APPEARS IN THE WORDING AUTO INSURANCE.

SER. NO. 78-95 ,266, FILED 8-4-2006.

WILLIAM VERHOSEK, EXAMINING ATTORNEY

EXHIBIT#1

# United States of America
## United States Patent and Trademark Office



**Reg. No. 3,260,827**  ACCURATE INSURANCE SERVICES, INC. (ILLINOIS CORPORATION)
9115 SOUTH HARLEM AVE.
**Registered July 10, 2007**  BRIDGEVIEW, IL 60455

**Corrected Aug. 7, 2012**  FOR: ACCIDENT INSURANCE UNDERWRITING; APPRAISALS FOR INSURANCE CLAIMS OF PERSONAL PROPERTY; INSURANCE BROKERAGE; INSURANCE CARRIER SERVICES; INSURANCE CLAIMS PROCESSING; INSURANCE CONSULTATION; INSURANCE SERVICES, NAMELY, UNDERWRITING EXTENDED WARRANTY CONTRACTS IN THE FIELD OF AUTOMOBILES; INSURANCE UNDERWRITING SERVICES FOR ALL TYPES OF INSURANCE, IN CLASS 36 (U.S. CLS. 100, 101 AND 102).

**Int. Cl.: 36**

**SERVICE MARK**

**PRINCIPAL REGISTER**  FIRST USE 11-1-1992; IN COMMERCE 11-1-1992.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "AUTO INSURANCE", APART FROM THE MARK AS SHOWN.

THE COLOR(S) RED, WHITE AND BLACK IS/ARE CLAIMED AS A FEATURE OF THE MARK.

THE COLOR RED APPEARS IN THE OBLONG DESIGN, THE COLOR WHITE APPEARS IN THE WORDING ACCURATE AND THE COLOR BLACK APPEARS IN THE WORDING AUTO INSURANCE.

SER. NO. 78-951,335, FILED 8-14-2006.



*David J. Kappos*
Director of the United States Patent and Trademark Office